UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMON
FILED

2007 OCT 15  PM 1:34

CLERK

BY_____
DEPUTY CLERK

|  |  |
|---|---|
| PAMELA GREEN,<br>        Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EDWIN W. WEBSTER (In His Individual<br>Capacity),<br>        Defendant. | ) |

Civil Action
Case No. 1:06-cv-96

## DEFENDANT'S L.R. 7.1(c)(1) STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT

NOW COMES Defendant Edwin W. Webster, by and through his attorneys McNeil, Leddy & Sheahan, P.C., respectfully submitting the following statement of undisputed material facts (with exhibits), pursuant to L.R. 7.1(c)(1), and in support of his Motion for Summary Judgment and Supporting Memorandum of Law, of even date, hereby incorporated by reference.

1. On February 11, 2005, Plaintiff Pamela Green ("Ms. Green") was a guest at the TopNotch Resort and Spa ("TopNotch") in Stowe, Vermont, where she was attending a work-related meeting.  Complaint at paras. 14-16.

2. In the evening of February 10, 2005, Ms. Green, at her request, changed rooms, from Room 311 to Room 310.  Complaint at para. 17.

3. After Ms. Green moved to Room 310, she realized she had left some of her belongings in Room 311.  She contacted TopNotch staff and made arrangements to return to room 311 to retrieve her belongings.  Complaint at paras. 18-20.

4. Richard Larabee ("Larabee"), a TopNotch security/maintenance person oversaw Ms. Green's return to Room 311.  Complaint at para. 21.

5. While still in Room 311, and with Larabee present, Ms. Green opened the top drawer of the room's entertainment center, in which Larabee observed



"approximately eight to twelve cellophane packets containing what appeared to be white powder." February 11, 2005 Sworn Statement of Richard E. Larabee ("Larabee Statement"), Exhibit 1.

6. Larabee also witnessed Ms. Green as she "placed the packets into a heavy duty shopping bag bag." *Id.* Exhibit 1.

7. After Ms. Green returned to Room 310, Larabee returned to Room 311. There, he observed white powder on the floor, and a clear plastic bag on a night stand. The bag contained a white paper towel and white powder. *Id.* Exhibit 1.

8. Larabee contacted Lamoille county Sheriff's Dispatch. *Id.* Exhibit 1.

9. Defendant Edwin Webster ("Officer Webster") is a police officer for the Town of Stowe, Vermont. Complaint at 9.

10. Officer Webster had had drug training and training with regard to the field testing of cocaine, and had read about and watched videos concerning drug education. January 10, 2007 deposition of Edwin Webster at 21 ("Webster depo at ___"). Exhibit 2.

11. Officer Webster had attended two (2), week-long DEA enforcement schools that expressly covered field testing for cocaine. Webster depo. at 22, Exhibit 3.

12. Officer Webster had done "maybe a dozen" field tests for cocaine. *Id.* At 23. Exhibit 4.

13. As a result of Larabee's call to Lamoille County Sheriff's Dispatch, Officer Webster was dispatched to TopNotch for a report from TopNotch Security that they had found an unknown substance in a room. February 11, 2005 affidavit of Edwin W. Webster, at paragraph 1, ("Webster affid. at para. 1"). Exhibit 5.



McNEIL,
LEDDY &
SHEAHAN
URLINGTON, VERMONT 05401

14. Officer Webster met Larabee, who had retrieved the "freezer bag" containing the white powdery substance that was on the nightstand in Room 311, at TopNotch. Webster affid. at paras. 2,5,7. Exhibit 5.

15. Webster looked at the white powdery substance, which based on his training and experience, appeared to be cocaine. Webster affid. at para 7. Exhibit 5.

16. Officer Webster testified in deposition:

> Based on what training and what experience I had, it
> looked like it might be cocaine.

Webster depo. at 28, Exhibit 6.

17. Officer Webster contacted Officer Garth Christensen of the Morristown Police Department and requested that he respond with a field test kit for narcotics. Webster affid. At para. 7, Exhibit 5.

18. Prior to February 11, 2005, Officer Christensen had had training in identification and field testing of drugs, including cocaine. November 16, 2006 deposition of Garth Christensen at 29 ("Christensen depo. at ___"). Exhibit 7; October 10, 2007 Affidavit of Garth Christensen at para. 4 ("Christensen affid. at para.___"), Exhibit 8.

19. Prior to February 11, 2005, Officer Christensen had done more than one field test for cocaine, and had been involved in investigations where there was evidence of cocaine. Christensen depo at 21, Exhibit 9; Christensen affid. at para. 5, Exhibit 8.

20. With regard to Officer Christensen, Officer Webster testified in deposition:

> I know at the time, he was working with the County
> Drug Task Force and they had done several cocaine
> arrests just prior to this which he was involved in.

Webster depo. at 22-23, Exhibits 3,4.

McNEIL,
LEDDY &
SHEAHAN

URLINGTON, VERMONT 05401

3

21. On February 11, 2005, Officer Christensen field tested the white powdery substance that had been on the night stand in Room 311, according to the field test kit's instructions. Christensen Narrative, February 11, 2005 ("Christensen Narrative"). Exhibit 10.[1] Christensen depo at 13, 14, 20 (collectively) Exhibit 11; Christensen affid. at para. 6, Exhibit 8.

22. Present when Officer Christensen filed tested the white powdery substance were Officer Webster and another Stowe Officer, Officer Dougherty. Dougherty Narrative, February 15, 2005. Exhibit 12; Christensen depo. at 27, Exhibit 13.

23. Officer Dougherty recalls Officer Christensen saying at the time, as he observed the white powdery substance: "I think this is cocaine." November 2, 2006 deposition of Michael Dougherty at 53 ("Dougherty depo. at ___"). Exhibit 14.

24. Officer Dougherty believed that the white powdery substance did not appear to be cocaine. *Id.*, Exhibit 14.

25. When Officer Christensen field tested the white powdery substance, all three officers agreed the substance field tested positive for cocaine. Christensen Narrative, Exhibit 10; Webster affid. at para. 7, Exhibit 5; Dougherty depo. at 31 (stating Christensen Narrative is accurate) Exhibit 15; Christensen affid. at para. 6, Exhibit 8.

26. After the field test, the white powdery substance was weighed by Officer Christensen at the Stowe Police Department. The "freezer bag" and the white powdery substance weighed 53 grams or 1.86 ounces. Webster affid. at para. 8. Exhibit 5.

27. Officer Webster applied for and was issued a search warrant for Room 310, the room that Ms. Green had moved to. Webster affid., Exhibit 5 (notarized by Hon.



**McNEIL,
LEDDY &
SHEAHAN**
URLINGTON, VERMONT 05401

---

[1] The Christensen Narrative mistakenly refers to Room 310.

4

Dean B. Pineles, Vermont District Judge); February 11, 2005 Application For

Search Warrant With Affidavit (signed by Officer Webster).  Exhibit 16; February

11, 2005 Search Warrant (for drugs, etc.), Hon. Dean B. Pineles, Exhibit 17.

28. A search of room 310 was completed.  Complaint at para. 98.

29. The search yielded nothing that the search warrant sought.  Complaint at para. 99.

30. During the search, Ms. Green told the officers that the white substance that was found in Room 311 was cornstarch that she applies to a rash on her leg. Dougherty Narrative, Exhibit 12.

31. During the search, Ms. Green was told that the white powdery substance she had left in Room 311 had field tested positive for the presence of cocaine.  She looked at Officer Webster in disbelief, told him that "she did not do drugs and that the material Officer Webster had described to her was cornstarch that she applies to her skin for hives.  February 18, 2005 Supplemental Affidavit of Edwin W. Webster at paragraph 2 ("Supp. Webster affid. At para. ___").  Exhibit 18.

32. During the search, Ms. Green told Officer Webster she wanted a lab test of the substance.  Officer Webster explained to her that the substance would be sent to the "State Lab" for further testing.  Supp. Webster affid. At para. 3.  Exhibit 18.

33. At the conclusion of the search, Ms. Green was arrested for possession of cocaine, as a result of the field test that Officer Christensen had done.  Webster depo. at 63, Exhibit 19; Dougherty depo at 66, Exhibit 20.

34. Webster told Ms. Green she needed to accompany him to his office to complete paperwork.  Supp. Webster affid. At para. 5.  Exhibit 18.

35. The officers left Room 310 so Ms. Green could get dressed.  *Id.*  Exhibit 18.

36. Once dressed, Ms. Green requested to be allowed to contact her supervisor to tell her about the situation.  Supp. Webster affid. At para. 6.  Exhibit 18.

MCNEIL,
LEDDY &
SHEAHAN
URLINGTON, VERMONT 05401

5

37. Ms. Green was cooperative and was not physically controlled or handcuffed. *Id.*

38. Ms. Green was allowed to call her supervisor. *Id.* Exhibit 18.

39. Officer Webster told Ms. Green she could sit in the front passenger seat of his cruiser for the trip to the Stowe Police Department. Ms. Green declined the offer and sat in the rear of the cruiser. Supp. Webster affid. At para. 7. Exhibit 18.

40. At the Stowe Police Department, Ms. Green was not restrained. She was "booked," fingerprinted and photographed. Supp. Webster affid. At para. 8. Exhibit 18.

41. While Ms. Green was still at the Stowe Police Department, a second field test was performed on the suspect substance by Stowe Police Department Detective Sergeant Edward Stewart ("Detective Stewart"). The result of that test was that the substance did not test positive for the presence of cocaine. Supp. Webster affid. At para 9. Exhibit 18.

42. Detective Stewart contacted the Vermont State Lab ("Lab"), which offered to do a test to determine what the substance was as soon as it could be brought to the Lab. Supp. Webster affid. At para. 10. Exhibit 18.

43. Still on February 11, 2005, Detective Stewart brought the substance to the Lab, and waited for the result. May 23, 2005 Supplemental Narrative of Edward Stewart. Exhibit 21.

44. At the Lab, the substance tested negative for cocaine and positive for cornstarch. Detective Stewart notified Chief Kaplan of the Stowe Police Department of the result. *Id.*; Exhibit 21. State of Vermont Department of Public Safety, Report of the Forensic Laboratory, February 11, 205, Exhibit 22.



MCNEIL,
LEDDY &
SHEAHAN
URLINGTON, VERMONT 05401

45. When Ms. Green first arrived at the Stowe Police Department with Officer Webster, it was approximately 7:47 a.m.  Supp. Webster affid. At para 8.  Exhibit 18.

46. Prior to the result of the Lab test being known, Ms. Green was given a citation to appear in Lamoille County District Court on April 4, 2005, and released at approximately 9:00 a.m.  Exhibit 23.

47. Two of Ms. Green's co-workers came to get her when she was released.  October 27, 2006 deposition of Pamela Green at 13 ("Green depo. at _____").  Exhibit 24.

48. She returned to TopNotch, showered, packed, and then attended the meeting at TopNotch that she had been scheduled to attend with her co-workers.  Green depo. at 14.  Exhibit 25.

49. Still on February 11, 2005, after Chief Kaplan learned of the Lab test results, he attempted to contact Ms. Green while she was still at TopNotch.  She did not want to speak with him.  Chief Kaplan spoke with Ms. Green's immediate supervisor and related that the citation which Ms. Green had received could be disregarded and that she did not have to appear in court.  November 16, 2006 deposition of Kenneth Kaplan at 44-45.  ("Kaplan depo. at ___") (collectively) Exhibit 26.

50. Still on February 11, 2005, Chief Kaplan sent Ms. Green a certified letter informing her that the white powder was confirmed to be cornstarch, not cocaine.  The letter told Ms. Green she could disregard the citation and assured her that no information would be given to the press.  Finally, the letter extended Chief Kaplan's sincere apologies on behalf of the Stowe Police Department, and invited her to call if he could be of any further assistance.  Ms. Green received that letter on February 22, 2005.  February 11, 2005 letter, Kenneth Kaplan to Pamela Green.  Exhibit 27; Kaplan depo at 43-44, (collectively) Exhibit 28.

MCNEIL,
LEDDY &
SHEAHAN
URLINGTON, VERMONT 05401

51. Ms. Green is a person of color. Complaint at para. 4.

52. In deposition, Ms. Green was asked whether during the incident, there were any overt acts or any words spoken that would lead a reasonable person to think that what was happening was racially motivated. Ms. Green's response was: "[I]n my mind, yes." When pressed as to whether she heard any racial epithets or any reference to her skin color by any of the officers or anything to that effect, Ms. Green replied: "Not that I can recall." Green depo. at 35. Exhibit 29.

Dated at Burlington, Vermont, this 15th day of October, 2007.

DEFENDANT EDWIN W. WEBSTER

By: _____

Joseph A. Farnham, Esq.
McNeil, Leddy & Sheahan, P.C.
271 South Union Street
Burlington, VT  05401
Attorneys for Defendant Edwin W. Webster

c:  David Putter, Esq.
    Kelly Kindestin (via e-mail, w/out exhibits)

400000-00246

