```
                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF VERMONT


PAMELA GREEN,                         :
        Plaintiff,                    :
                                      :
        v.                            :   File No. 1:06-CV-96
                                      :
TOPNOTCH AT STOWE,                    :
JLC INVESTMENT, INC.,                 :
JALOB HOLDINGS, LTD., and             :
EDWIN W. WEBSTER, JR.                 :
(in his individual capacity),         :
        Defendants.                   :
_____:
```

RULING ON DEFENDANT WEBSTER'S
MOTION FOR SUMMARY JUDGMENT
(Paper 32)

Remaining in this action is Plaintiff Pamela Green's ("Plaintiff") claim under 42 U.S.C. § 1983 for false arrest against Defendant Edwin W. Webster ("Defendant"), an officer with the Stowe Police Department.[1]  Pending is Defendant's motion for summary judgment in which Defendant argues he had probable cause to arrest Plaintiff, and alternatively, is shielded by qualified immunity.  (Paper 32).  Upon consideration of the filings in this case, including the parties' statements of undisputed and disputed material facts, for the reasons set forth below, the Court grants summary judgment in favor of Defendant.

---

[1] Plaintiff's claims against Defendants Topnotch at Stowe, JLC Investment, Inc., and Jalob Holdings, Ltd. were settled and dismissed with prejudice.  (Paper 13).

1

I.   <u>Factual Background</u>[2]

From February 8-11, 2005 Plaintiff, an African-American woman, was a guest at the Topnotch Resort and Spa ("Topnotch") in Stowe, Vermont where she was attending a work-related meeting. Apparently not completely happy with her room, on the evening of February 10, 2005 Plaintiff switched from Room 311 to 310 but in the process of doing so, inadvertently left some items in Room 311. She contacted Topnotch staff to retrieve these items and Richard Larabee ("Larabee"), a Topnotch security/maintenance employee, was sent to assist her at approximately 11:30 p.m. When Plaintiff opened the drawer of Room 311's entertainment center Larabee observed approximately eight to twelve cellophane packets containing what appeared to be white powder and watched as Plaintiff placed the packets into a heavy duty shopping bag. Plaintiff returned to Room 310 while Larabee went back to Room 311 and saw white powder on the floor and a clear plastic bag containing a white paper towel and a white powdery substance on a night stand. Suspecting foul play, Larabee contacted Lamoille

---

[2]The following material facts are undisputed unless noted otherwise. Absent from this factual discussion are many of "Plaintiff's own affirmative allegations with respect to this motion" which consist of approximately 150 paragraphs. (Paper 36 at 14-37). For the most part, these allegations are either argument or immaterial because they are unrelated to the question of whether, objectively speaking, probable cause to arrest Plaintiff existed at the time of her arrest.

county Sheriff's dispatch and reported the presence of an unknown substance.

Soon after midnight on February 11, 2005 Defendant arrived at Topnotch to investigate, whereupon Larabee presented the clear plastic bag containing the white powdery substance.  Although Defendant was not completely comfortable with drug investigations and was not a self-described "drug man," he had received drug training and training on field testing cocaine, had read about and watched videos concerning drug education, had attended two, week-long DEA enforcement schools that expressly covered field testing for cocaine, and had completed "maybe a dozen" field tests for cocaine.  Based on his training and experience, Defendant surmised the white powder appeared to be cocaine.[3]

Defendant contacted Officer Garth Christensen ("Christensen") of the Morristown Police Department and requested Christensen respond with a field test kit for narcotics. Christensen had received training in the identification and field testing of drugs, including cocaine, and prior to February 11, 2005 had conducted more than one field test for cocaine and been involved in investigations where there was evidence of cocaine. For his part, Defendant was aware Christensen was working with

---

[3] Plaintiff's attempt to dispute this fact falls short of the mark (Paper 36 at 5, ¶ 15) because Defendant merely testified he was unable to tell definitively from a visual inspection whether the substance was cocaine.

the County Drug Task Force and had been involved in several cocaine arrests.  At some point, Officer Dougherty ("Dougherty"), another Stowe police officer, arrived and opined the substance did not appear to be cocaine.  Dougherty recalls Christenson stating he thought the substance was cocaine, although neither Defendant nor Christenson recall this.  Then, with Dougherty's assistance, Christensen field-tested the substance believing he did so according to the field test's instructions.  All three officers agreed the substance field-tested positive for cocaine.

   Defendant applied for and was issued a state search warrant to search Room 310 for, among other things, drugs and drug paraphernalia.  During the search, Plaintiff appeared to be in a state of disbelief and insisted the substance was cornstarch to treat a rash on her leg.  Execution of the search warrant revealed nothing noteworthy except a shopping bag filled with women's sanitary pads.  With the search complete, Defendant arrested Plaintiff for possession of cocaine and took her to the Stowe Police Department.  After being booked and given a citation to appear in court, Plaintiff was released and returned to Topnotch in time for her scheduled business meeting.

   Meanwhile, at the Stowe Police Department a second field test conducted on the substance by Detective Sergeant Edward Stewart revealed a negative result for cocaine.  Finally, a third and ultimately conclusive test performed at the Vermont State Lab

4

revealed the substance was not cocaine, but in fact cornstarch. Upon learning of the State Lab results, Stowe Police Chief Kenneth Kaplan notified Plaintiff's supervisor that her citation should be disregarded and she was no longer required to appear in court.  In a letter to Plaintiff dated February 11, 2005 Chief Kaplan again told her she should disregard the citation and offered an apology on behalf of the entire Stowe Police Department.

    This lawsuit ensued.

II.   Summary Judgment Standard

    Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The evidence is reviewed in a light most favorable to the nonmoving party with all ambiguities and reasonable inferences drawn in favor of the nonmoving party.  See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 61 (2d Cir. 2000).  Initially, the moving party has the burden of presenting those parts of the record demonstrating an absence of a genuine issue of material fact, after which the nonmoving party must set forth specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

III. Discussion

Defendant principally argues Plaintiff's false arrest claim falters because the undisputed facts establish probable cause to arrest Plaintiff for possession of cocaine.  The Court agrees.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest whether that action is brought under state law or under § 1983."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citations omitted).  Probable cause is found "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks and citations omitted).

Here, it is undisputed that: (1) Defendant was presented with a bag containing a white powdery substance; (2) based on his training and experience, the substance appeared to Defendant to be cocaine; and (3) all three officers agreed the substance field-tested positive for cocaine.  The Court concludes this information provided sufficient probable cause to take Plaintiff into custody.  See United States v. Uricoechea-Casallas, 946 F.2d 162, 166 (1st Cir. 1991) (agents clearly had probable cause to arrest when a field test of white powder indicated the presence

6

of cocaine); United States v. Crespo, 868 F. Supp. 79, 85 (M.D. Pa. 1994) ("the field test taken at the scene proved positive for cocaine [which] . . . in and of itself, constitutes probable cause to arrest").  It does not matter the substance was later found to be cornstarch, especially because there is no evidence any officer acted disingenuously, let alone with racial animus, in either conducting the test or interpreting its results. Indeed, as several courts have reasoned, a second test's conclusion that a substance was not illegal does not retroactively invalidate the existence of probable cause at the time of arrest.  Herron v. Lew Sterrett Justice Ctr., 2007 WL 2241688, at *3 (N.D. Tex. Aug. 6, 2007); Hines v. Port Auth. of N.Y. and N.J., 2000 WL 420555, at *5 (S.D.N.Y. Apr. 18, 2000); Kimbrew v. Evansville Police Dep't, 867 F. Supp. 818, 826 (S.D. Ind. 1994).

   Plaintiff's suggestion that Defendant's investigation was not sufficiently thorough does not alter the Court's conclusion because "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).  Relatedly, the fruitless search did not cause probable cause to evaporate because nothing about the search, including the discovery of a bag of women's sanitary

7

pads, watered down or altered what Defendant had already collected - a white powdery substance he believed to be cocaine which had field-tested positive for the presence of cocaine.[4]

Finally, even if the Court had concluded probable cause was lacking, the Court would find Defendant is entitled to qualified immunity.  The right to be free from false arrest is a long established constitutional right and in this context, a police officer is protected by qualified immunity where: "(1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest."  Id. at 128.

For substantially the same reasons supporting the Court's finding of probable cause, including the substance being white powder, Defendant's visual inspection, and the initial positive field test, it was objectively reasonable to believe probable cause existed to arrest Plaintiff.  See Pennington v. Hobson, 719 F. Supp. 760, 766-68 (S.D. Ind. 1989) (objectively reasonable to believe there was probable cause to arrest where field test indicated powder was cocaine even though a later laboratory test identified powder as aspirin and there was no indication officers were disingenuous in performing the field test).  Accordingly,

---

[4] Because nothing plainly contradicted the positive field test, Plaintiff's citation to Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999) is unavailing.

Defendant would be entitled to qualified immunity even if the arrest were not supported by probable cause.

IV. <u>Conclusion</u>

With the benefit of hindsight it might be said the Stowe Police Department's investigation was less than perfect.  But probable cause to arrest Plaintiff for possession of cocaine did exist at the moment of her arrest.  Accordingly, Defendant's motion for summary judgment (Paper 32) is GRANTED.  The Defendant's counterclaim (Paper 24, at 9) is moot.  This case is hereby DISMISSED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 7th day of February, 2008.

<u>/s/ J. Garvan Murtha</u>
J. Garvan Murtha
United States District Judge